UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>   v.<br><br>JESSE RICHARDSON,<br><br>          Defendant. | No. 2:17-cr-00048-JAM<br><br>**ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE** |

Before the Court is Defendant Jesse Richardson's ("Defendant") Pro Se Emergency Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A). In his motion, Defendant contends that his health conditions make him particularly susceptible to COVID-19 complications and that the odds of contracting them at FCI Terminal Island are high. Mot. for Comp. Release ("Mot."), ECF No. 69. Defendant filed two supplemental motions. Suppl. Mot. #1, ECF No. 71; Suppl. Mot. #2, ECF No. 72. The Government Opposed Defendant's request, ECF No 73; and Defendant replied to the Government's opposition. ECF No. 80. After careful consideration of the arguments and exhibits submitted by the parties, the Court GRANTS Defendant's motion.

1

I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

On March 23, 2017, Defendant pleaded guilty to conspiracy to distribute Oxycodone, in violation of 21 U.S.C. §§ 841(a)(1), 846.  See Plea Agreement, ECF No. 57.  After calculating Defendant's advisory guideline range and considering the United States Probation Officer's Presentence Investigation Report ("PSR"), the Court imposed a low-end sentence: 72 months of imprisonment followed by 36 months of supervised release.  See Minutes for Judgment and Sentencing, ECF No. 65.

Defendant is currently serving his sentence at FCI Terminal Island.  Mot., Exh. A, at 1.  He has served more than 52% of his sentence (38 Months).  Mot. at 2.  Defendant is projected to be released on April 18, 2021 but is eligible for home confinement starting October 18, 2020.  Id., Exh. A., at 1.

On March 13, 2020, President Trump declared a national emergency concerning the COVID-19 global outbreak.  See *Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, The White House (March 13, 2020), https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.  Because of the severity posed by this pandemic, the U.S. Attorney General ordered the Bureau of Prisons (BOP) to prioritize home confinement when appropriate "to protect the health and safety of BOP personnel and the people in [] custody."  The Attorney General, *Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic, Memorandum for Director of Bureau Prisons*, Office of The Attorney General (March 26, 2020),

2

https://www.themarshallproject.org/documents/6820452-Memorandum-from-Attorney-General-to-BOP-re-Home.  Defendant therefore attempted to request compassionate release with the BOP on April 16, 2020, stating that his hypertension, severe obesity, and pre-diabetes, place him at higher risk of COVID-19 complication. Mot. at 3-6.  Defendant had difficulties getting the BOP to acknowledge and respond to his request; he therefore continued to contact and submit requests even after the filing of this motion with the Court.  Reply at 15-16.  Defendant most recently filed a motion for compassionate release directly with the Warden on May 5, 2020.  Id. at 15.

Given the BOP's lack of response, Defendant filed this motion with the Court on April 28, 2020.  Mot. at 1.  At the time of Defendant's filing, over 100 inmates had contracted Covid-19 at his facility, two of them died.  Mot. 5.  By the time of his reply, the situation had dramatically worsened—more than 70% of the inmate population became infected and 8 had inmates died. Reply at 2.  Defendant therefore asks the Court to consider these circumstances extraordinary and compelling given his health complications and convert his remaining time to "time served." Mot. at 11.

II.  OPINION

A.  Legal Standard

A court may generally "not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c); Dillon v. United States, 560 U.S. 817, 824-25(2010).  Passed in 2018, the First Step Act (FSA) modified 18 U.S.C. Section 3582 to grant

3

federal courts such authority under certain exceptions.  18 U.S.C. § 3582(c)(1)(A).  To file a motion for modification with the court, a Defendant must first submit a request for release with the Bureau of Prisons ("BOP").  Id.  A defendant must then exhaust administrative remedies by either (1) administratively appealing an adverse result or (2) waiting for 30 days to pass.  Id.  Only then may a Defendant, or the Director of the BOP, file a motion for modification.  Id.  The court can then modify the term of imprisonment after considering any relevant factors set forth in Section 3553(a), and if it finds, in relevant part, that "extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A)(i).

    B.    Analysis

        1.    Exhaustion Requirement

As a threshold matter, a defendant must generally exhaust his administrative remedies before the Court can address the merits of a motion for compassionate release.  See U.S. v. Kesoyan, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *2 (E.D. Cal. April 28, 2020).

In his Motion, Defendant stated he had attempted to file a request for compassionate release with the BOP on April 16, 2020, but the BOP had yet to reply.  Mot. at 3.  Defendant further noted "there appear[ed] to be an intentional effort by staff to prevent access to the administrative remedy process at this time."  Id. at 3.  In its Opposition, the Government argued that Defendant had not exhausted his remedies because "the BOP does not have any record" of his request.  Opp'n at 8.  The Government contends the Court does not have authority to grant

4

relief for this reason.  Id. at 10.

This Court recently noted that over the past few months, the BOP has—on several occasions—incorrectly represented the status of inmates' exhaustion efforts.  See U.S. v. Levario, No. 12-cr-00399-JAM, at *4 (E.D. Cal. June 15, 2020).  While the Court is not assuming bad faith, it bears mentioning that these mistakes come at a cost to defendants.  The Court therefore finds the BOP's alleged lack of records in this case not to be controlling.  This is especially so given Defendant's detailed log of his multiple requests for compassionate release with the BOP.  See Reply at 10.  Most importantly, Defendant has attached one of his most recent requests with the BOP dated May 5, 2020.  See Reply, Exh. C.  Defendant has also attached a follow-up request dated May 18, 2020, which a BOP staff member signed stating that his May 5, 2020 request was under review.  See id., Exh. E.  More than thirty days have passed since Defendant filed the May 5, 2020 request with the BOP.  The Court therefore finds Defendant has satisfied Section 3582(c)'s exhaustion requirement.

        2.   Extraordinary and Compelling Circumstance

After a defendant has met the threshold exhaustion requirement, a court may grant the motion if it finds "extraordinary and compelling reasons warrant" a reduction.  18 U.S.C. § 3582(c)(1)(A)(i).  The reduction must be "consistent with applicable policy statements issued by the Sentencing Commission."  Id.  Congress has not defined what constitutes as "extraordinary and compelling" other than that "[r]ehabilitation of the defendant alone" is insufficient.  28 U.S.C. § 994(t).

Instead, it has delegated that responsibility to the Sentencing Commission. Id. Before the FSA was passed, the Commission concluded "extraordinary and compelling reasons" were limited to four scenarios. U.S.S.G. § 1B1.13. These scenarios include: (A) the medical condition of the defendant, (B) the age of the defendant, (C) family circumstances, and (D) a catchall provision. Id.

Defendant does not specify under which provision he asks the Court to consider his extraordinary and compelling circumstance. However, because Defendant asks the Court to consider his "health conditions" the Court will analyze his circumstances under provision (A)—the medical condition of the defendant. A defendant's medical condition may constitute an "extraordinary and compelling reason" if the defendant is suffering from "a serious physical or medical condition," "a serious functional or cognitive impairment," or is "experiencing deteriorating physical or mental health because of the aging process," which "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." See U.S.S.G § 1B1.13(1)(A) & cmt. 1.

As the Government notes, [t]he general threat of COVID-19 . . . does not establish an "extraordinary and compelling reason for release." Opp'n at 12. But Defendant does not ask the Court to consider his circumstances under the general threat of COVID-19. Rather, Defendant claims that his hypertension, severe obesity, and pre-diabetes, coupled with the critical situation at Terminal Island, constitute extraordinary

circumstances that warrant his release. Reply at 18. The Court agrees.

The Government argues that although Defendant "appears" to have serious, chronic health conditions he has "failed to satisfy his burden and distinguish himself from many of the middle-age men in BOP custody." Opp'n at 14. Specifically, the Government attempts to discount the severity of Defendant's hypertension, severe-obesity, and pre-diabetes. Id. at 12-13. While the Court agrees with the Government that pre-diabetes may not place Defendant at high risk, this Court finds that hypertension or obesity alone—regardless of age—place a defendant at higher risk of COVID-19 complications. See e.g, Levario, No. 12-cr-00399-JAM, at *6 (Stating each of defendant's comorbidities alone, asthma, diabetes, hypertension, and severe obesity, would increase his risk of contracting COVID-19).

Here, Defendant's hypertension alone places him at significant risk of complications. See U.S. v. Sanders, No. 19-cr-20288, 2020 WL 1904815, at * 4 (E.D. Mich. April 17, 2020)(citing several courts that "have identified hypertension as an underlying medical condition that renders a prisoner higher-risk, weighing against continued detention during the COVID-19 pandemic."). In New York—the most affected state in the nation until recently—hypertension was an underlying health condition in close to 55% of COVID- 19 deaths. See *Fatality Tracker*, NEW YORK STATE DEPARTMENT OF HEALTH (Last Updated: June 14, 2 020), https://covid19tracker.health.ny.gov/views/NYS-COVID19-Tracker/NYSDOHCOVID-19Tracker-Fatalities?%3Aembed=yes&%3Atoolbar=no&%3Atabs=n.

Severe obesity also places Defendant at higher risk of serious health problems should he contract COVID 19.  See *Groups at Higher Risk for Severe Illness*, Corona Virus Disease *2019 (COVID-19)*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Last Updated May 14, 2020) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#severe-obesity.  And while the Government attempts to argue Defendant is not severely obese because his BMI is 38, instead of 40, based on his September 2019 weight, that difference is trivial.  Opp'n at 13.  Moreover, Defendant has indicated he weighed 304 pounds at his most recent chronic care visit on May, 6, 2020, which would place him at a BMI of 40.  Reply at 19.  The Government's attempt to minimize the seriousness of Defendant's risk factors therefore fails.

As Defendant points out, the "[BOP]'s proven failure to mitigate the spread of COVID-19 within Terminal Island," makes his situation even more dire.  Reply at 18.  At the time Defendant filed his initial motion, roughly 100 inmates were infected with COVID-19.  Mot. at 5.  Just a week later, Defendant supplemented his motion because the count had skyrocketed to over 620 inmates and 5 deaths.  See Suppl. Mot. #1, at 1; see also Suppl. Mot. #2, at 2.  Indeed, the situation at Terminal Island worsened so dramatically that the ACLU filed a class action lawsuit against the Warden.  Reply at 14-15.  The court overseeing the suit noted 9 prisoners have died at Terminal Island and nearly 67% have been infected.  See Wilson v. Ponce, No. CV 20-4451-MWF, 2020 WL 3053375, at *2 (C.D. Cal. Jan 8, 2020).

8

Defendant has for now somehow defied the odds of infection, testing negative as of May 5, 2020. See Suppl. Mot #2, at 2. But although Terminal Island is no longer at its peak of infections, there are still eight active cases. *COVID-19 Coronavirus*, FEDERAL BUREAU OF PRISONS (Last Updated June 15, 2020), https://www.bop.gov/coronavirus/. In Wilson, the court noted that "regardless of the recovery statistics reported by the BOP, it appears that prisoners still face significant risk at Terminal Island." 2020 WL 3053375, at *2. Indeed, given the magnitude with which the BOP failed to curtail the spread of the virus at Terminal Island, this Court is anything but confident that Defendant will continue to be as fortunate. See U.S. v. Sewell, No. 2:05-cr-00554-TLN, at *4 (E.D. Cal. June 5, 2020)(finding defendant was still at "great particularized risk" with only 15 active cases, because his facility had one of the worst outbreaks in the nation).

Thus, the COVID-19 conditions at Terminal Island, coupled with Defendant's medical conditions which "render [him] uniquely vulnerable to serious illness if he contracts COVID-19, substantially diminish his ability to provide self-care within the environment of a correctional facility." U.S. v. Sarkisyan, No. 15-cr-00234-CRB-15, 2020 WL 2542032, at * 2 (N.D. Cal. May 19, 2020)(internal citations omitted)(granting motion where defendant's medical conditions included: hypertension, chronic kidney disease, and obesity).

### 3. Danger to the Community

The Government argues that even if Defendant's circumstance is extraordinary and compelling, he is ineligible for

9

compassionate release because he is a continuing danger to the community.  U.S.S.G. § 1B1.13(2) (requiring courts to determine that a defendant is not "a danger to the safety of any other person or to the community").  Specifically, the Government argues Defendant is dangerous because he is a "prolific drug dealer" that committed additional crimes on six occasions "while on parole or supervision."  Opp'n at 14-15.

But Defendant's crime was not violent, and his prison disciplinary record is clean.  Reply at 19-20.  While the Government argues "purported rehabilitation does not satisfy this burden," opp'n at 15, it does "weigh in favor of finding Defendant is no longer a threat to the community."  See Sewell, No. 2:05-cr-00554-TLN, at *5 (finding lack of prison disciplinary record weighed in favor of determination that defendant, convicted of a drug crime with previous parole violations, was no longer a threat to the community).  Moreover, Defendant is scheduled to be released into the community on home confinement in approximately four months, which is a significant indication that he is not a danger to the community.  Reply at 20.

     4.   Sentencing 3553(a)Factors

Lastly, in deciding whether compassionate release is warranted, the Court must also consider the relevant factors set forth in 18 U.S.C.A. Section 3553.  18 U.S.C. § 3582(c)(1)(A)(i).  The Government argues these factors weigh against granting Defendant's motion because: he is a "prolific drug dealer," the BOP has not proven it is unable to manage his health conditions, and "defendant's health conditions do not appear dire."  Opp'n at

10

16. The Court has already refuted each of these points—but reiterates its findings. First, as noted, Defendant committed a non-violent crime and is expected to be released in approximately four months. Second, the Court finds the conditions at Terminal Island are such that it is not confident Defendant can be adequately cared for if he contracted the virus. Finally, Defendant's hypertension and severe obesity would place him at significantly higher risk of COVID-19 complications.

Congress has entrusted the courts with imposing sentences "sufficient but not greater than necessary." 18 U.S.C. § 3553(a). One of the sentencing factors the Court must also consider, is the "need for the sentence imposed . . . to provide the defendant with . . . medical care . . . in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). As emphasized above, Terminal Island has not demonstrated that it is equipped to do that. See U.S. v. Robinson, No. 18-cr-00597-RS-1, 2020 WL 1982872, at *3 (N.D. Cal., April 27, 2020) (finding defendant is "unlikely []to get the medical care he needs at FCI Lompoc in the midst of the pandemic", where over 90% of inmates contracted COVID-19). Keeping Defendant at Terminal Island is therefore not the "most effective manner" of mitigating the serious risks he faces during this pandemic. Such an outcome "would so greatly exceed just punishment of his offence that the Court cannot tolerate the risk." Id. (internal citations omitted).

### III. ORDER

For the reasons set forth above, the Court GRANTS Defendant's Motion for Compassionate Release. Accordingly, the

1 Court modifies Defendant's sentence of imprisonment to time
2 served followed by 36 months of supervised release imposed in the
3 previous sentence.
4    Defendant agrees to the Government's request and the Court
5 orders Defendant to complete a 14-day quarantine period and
6 obtain medical clearance before he is released. Afterwards,
7 Defendant shall be released to the "Good Cause Sacramento"
8 Outreach program. The Court expects the full cooperation of the
9 BOP in carrying out these release conditions in a timely manner.

11    IT IS SO ORDERED.
12 Dated:   June 19, 2020

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE